### CAPITAL TRANSIT CO. v. DISTRICT OF COLUMBIA.
#### No. 6780.

United States Court of Appeals for the District of Columbia.

Decided Dec. 14, 1936.

Thomas Dunlop and S. R. Bowen, both of Washington, D. C., for plaintiff in error.

Vernon E. West, H. D. Folsom, and Raymond S. Sparks, all of Washington, D. C., for defendant in error.

Before ROBB, VAN ORSDEL, GRONER, and STEPHENS, JJ.

STEPHENS, J.

This case arises upon a writ of error to the Police Court of the District of Columbia. The question involved, broadly stated, is whether or not a motor vehicle primarily operated in daily scheduled routed passenger bus service in the District of Columbia, for which a mileage tax of eight-tenths of one cent for each vehicle-mile proposed to be operated during a particular license year is required, is also subject to a per annum license tax of $100 if used occasionally in charter-bus or sight-seeing service.

The pertinent statutory provisions are as follows:

"Par. 31. (a) * * *

"(b) Any . . . corporation operating or proposing to operate any vehicle or vehicles not confined to rails or tracks for the transportation of passengers for hire over all or any portion of any defined route or routes in the District of Columbia, *except when such vehicle or vehicles are to be operated solely for sight-seeing purposes,* shall, on or before the 1st day of October in each year, or before commencing such operation, submit to the Public Utilities Commission of the District of Columbia, in triplicate, an application for license, stating therein the name of such . . . corporation, the number and kind of each type of vehicle to be used in such operation, the schedule or schedules *and the total number of vehicle-miles to be operated with such vehicles within the District of Columbia* during the twelve-month period beginning with the 1st day of November in the same year. The Public Utilities Commission shall thereupon verify and approve, . . each such statement, and when approved, . . return one copy to the applicant. Upon receipt of the approved copy, and prior to the 1st day of November in the same year, or before commencing such operation, each such *applicant shall pay* to the collector of taxes, *in lieu of any other* franchise, personal or *license tax,* in connection with such operation, *the sum* of eight-tenths of 1 cent *for each vehicle-mile proposed to be operated in the District of Columbia in accordance with the application as approved.* Upon presentation of the receipt for such payment, the Commissioners of the District of Columbia or their designated agent shall issue a license authorizing the applicant to carry on the operations embodied in the approved application. No increase of operations shall be commenced or continued unless and until an application similar to the original and covering such increase in operation shall have been approved and forwarded in the same manner and the corresponding additional payment made and license issued. . . . .

"(c) Owners of passenger vehicles for hire having a seating capacity of eight passengers or more, in addition to the driver or operator, *other than those licensed in the preceding subparagraph,* shall pay a license tax of $100 per annum for each vehicle used. No such vehicle shall

be operated unless there shall be conspicuously displayed therein a license issued under the terms of this subparagraph." [Italics supplied] [D.C.Code (Supp. II, 1936) tit. 20, § 1731, 47 Stat. 555]

The plaintiff in error, Capital Transit Company, hereinafter referred to as the Transit Company, was charged by the District of Columbia, hereinafter referred to as the District, with non-compliance with the requirement of these statutes. The charge was made in an information, the contents of which were stipulated to represent the facts in the case. Motion to quash the information was denied. The Transit Company pleaded not guilty, waived trial by jury, and upon the stipulated facts moved for a finding in its favor and a judgment of not guilty. After overruling this motion the trial court found the defendant guilty as charged, and imposed a fine of $25. To all of these rulings adverse to the Transit Company due exception was taken. The assignment of errors raises the one question broadly set out above. The following is a paraphrase of the stipulated facts: The Transit Company, pursuant to the provisions of subparagraph (b) of paragraph 31, on September 30, 1935, made application for a license for all buses owned by it, and, prior to November 1, 1935, paid to the Collector of Taxes the sum of eight-tenths of one cent for each vehicle-mile proposed to be operated during the license year November 1, 1935–October 31, 1936, in the District by such vehicles, including vehicle No. 2972, and received a license authorizing it to carry on in the District operations specified in subparagraph (b) with the vehicles so licensed. Vehicle No. 2972 is one of a large number of similar buses operated by the Transit Company for common carrier transportation of passengers for hire in daily scheduled routed bus service, except when operated from time to time in charter-bus or sight-seeing service. When in such service it is hired from the Transit Company by one or more persons for a definite trip which may be entirely within, or partly within and partly without, the District. When in such occasional charter-bus or sight-seeing service this vehicle is operated at such times and in such manner as not to conflict with its operations in the regular scheduled service, and it is operated in both classes of service by a driver regularly employed by the Transit Company as a bus operator in its common carrier bus transpor-

tation business. No vehicles for hire having a seating capacity of eight passengers or more, in addition to the driver or operator, are operated by the Transit Company other than those licensed under subparagraph (b) of paragraph 31, and none of these vehicles is operated throughout the license year solely for charter-bus or sight-seeing purposes. While not needed for regular scheduled service, vehicle No. 2972 was chartered for a definite trip in the District on April 7, 1936, and on such trip it was wilfully operated by the Transit Company in charter-bus service in the District without the Company having paid for said vehicle the license tax imposed by subparagraph (c) of paragraph 31.

We think the decision of the trial court adjudging the defendant guilty was incorrect.

■ Subparagraph (c) of paragraph 31— "Owners of passenger vehicles for hire having a seating capacity of eight passengers or more, in addition to the driver or operator, other than those licensed in the preceding subparagraph, shall pay a license tax of $100 per annum for each vehicle used."—clearly subjects vehicle No. 2972 to the $100 per annum tax unless the vehicle is within the excepting clause. We think it is. The phrase in the excepting clause "those licensed" obviously refers to the word "vehicles" preceding. Vehicle No. 2972 was licensed under subparagraph (b) under the stipulated facts. It is true that its subjection to license under subparagraph (b) was because it was a vehicle to be operated primarily for regularly routed passenger transportation as distinguished from charter-bus or sight-seeing service. There seems no escape from the proposition that it was licensed under subparagraph (b), however, in the only manner in which any vehicle could be licensed under that subparagraph. It is, therefore, literally within the terms of the exception in subparagraph (c). Subparagraph (c) is phrased in terms of licensing vehicles—individual, specific conveyances. Thus: "passenger vehicles for hire having a seating capacity of eight passengers or more" and "No such vehicle shall be operated unless there shall be . . . displayed therein a license issued under the terms of this subparagraph." We are unable to see in this language any connotation of particular uses or businesses. The exception exempts any vehicle which has been licensed under subpara-

graph (b). Bus No. 2972 was, by stipulation, such a vehicle.

■ The District urges that the legislative intent in subparagraph (c) is not to license vehicles but to license uses or businesses, and that, therefore, the fact that a scheduled routed passenger transportation service was licensed under subparagraph (b) in respect of a particular vehicle does not exempt the same conveyance from the licensing provisions of subparagraph (c) for a different type of service—to wit, sight-seeing and charter-bus service. The District asserts that the Transit Company, in respect of vehicle No. 2972, is engaged in two businesses. The District bases its contention that the intent was to license uses or businesses, rather than vehicles, in part upon the following paragraphs of the statute:

"Sec. 7. No person shall engage in or carry on any business, trade, profession, or calling in the District of Columbia for which a license fee or tax is imposed by the terms of this section without having first obtained a license so to do. . . ." [D.C.Code (Supp. II, 1936) tit. 20, § 1701, 32 Stat. 622, as amended by 47 Stat. 550]

\* \* \*

"Par. 4. When more than one business, trade, profession, or calling for which a license is herein prescribed shall be carried on by the same person, the license fee or tax shall be paid *for each such business,* trade, profession, or calling, except where otherwise specifically provided herein: . . ." [Italics supplied] [D.C.Code (Supp. II, 1936) tit. 20, § 1704, 32 Stat. 623, as amended by 47 Stat. 551]

The District asserts that these two paragraphs contemplate the separate licensing of each business carried on. While the general language of these two paragraphs does seem to contemplate the separate licensing of each business, trade, etc. (except where otherwise provided), such general language cannot prevail over the specific licensing language of subparagraph (c), which we have above shown to be clearly in terms of licensing vehicles, not businesses.

In further support of its contention that the intent was to license uses or businesses rather than vehicles, the District refers to the legislative history of the statute, contained in H.R.Rep. No. 1385, 72d Congress, 1st Session (1932) 2–4, and particularly to the following two paragraphs therein:

"The existing license provisions with respect to public vehicles are notoriously obsolete. Hundreds of huge interstate busses operate over the District of Columbia pavements and occupy space on the public streets without the payment of any substantial license, franchise, or property tax. Local common-carrier busses operating thousands of miles a month pay only $12 per annum, although the direct expense of policing and supervision is vastly in excess of that amount. Taxicabs and sight-seeing vehicles plying the public streets for hire and occupying curb space pay only $9 per annum. The provisions of paragraph 31 are intended to establish a tax basis in lieu of any other franchise, personal, or license tax by a requirement of 8 mills per bus-mile on routed common carrier vehicles except sight-seeing vehicles. In view of the fact that the mileage operated by such vehicles can be ascertained with reasonable accuracy and bears a direct relation to the extent of use within the District of Columbia, it is believed that this is the most reasonable method of taxation and has been almost universally adopted for taxing routed public passenger vehicles in the States.

"Sight-seeing busses, charter busses, and similar vehicles operate irregular distances and irregular routes and the mileage tax is not applicable. Therefore, a fixed tax of $100 per vehicle is proposed." It is true that these paragraphs, and also a tabulation on page four of the Committee Report, indicate that the Committee was aware of two general bus businesses —routed common carrier service to which a mileage tax is conveniently applicable, and charter-bus and sight-seeing service for irregular distances and routes. And the report constitutes some evidence that the Committee intended to license businesses rather than vehicles, but we think not such clear evidence as to make it proper for us to depart from what we think the words of the statute necessarily mean. Nor would it necessarily follow from the fact that the Committee intended to tax businesses that it intended to require for a single vehicle both a mileage tax, because of its regularly routed transportation service, and also a per annum tax, because of its occasional sight-seeing or charter-bus service. The Committee Report is wholly silent as to mixed use. The Transit Company does not contend that the statute

permits it to operate a tax-free occasional sight-seeing or charter-bus service. Under the facts, it has paid for this service on an estimated vehicle-mile basis.

■ The District also argues that vehicle No. 2972 must be licensed under subparagraph (c) because it is covered by the general language thereof and is not within the excepting clause since not licensed under subparagraph (b) for charter-bus service. The District supports the proposition that occasional charter-bus use of the vehicle in question was not licensed under subparagraph (b) by urging that the excepting language in subparagraph (b)—"except when such vehicle or vehicles are to be operated solely for sight-seeing purposes"—means, because of the use of the word "when," any sight-seeing service of any length, however short, provided that during such service the vehicle is used solely for sight-seeing purposes. In respect of this argument, it is to be noted at the outset that while it is based upon the words of subparagraph (b), it is made in terms of the licensing of uses or businesses, rather than vehicles. It is based upon the premise that it was the legislative intent to license uses or businesses rather than vehicles. We have just shown that this is not demonstrable. Even assuming the validity of the premise, we think this further argument for the District is not textually valid. Although the word "when" is grammatically susceptible, in its temporal meaning, of application to use for one day, or for any other period of time less than the tax year, we think that to employ it in so limited a sense disregards the fact that the licensing plan set forth in the whole of subparagraph (b) requires a license application which specifies the contemplated operation of the vehicles throughout an entire approaching tax year. The excepting clause itself, in its use of the words "are to be operated solely for sight-seeing purposes," looks to the future. And we think it thus clear that the word "solely" is used in application to the entire tax year rather than in application to occasional use for any less period of time. Moreover, it is to be noted that if the word "when" is to be limited to an occasional use for any period less than the entire tax year, the word "solely" is unnecessary.[1]

We conclude that the statute requires, in respect of bus transportation, the licensing of vehicles rather than uses or businesses, and contemplates but one license for such a vehicle as No. 2972, which, under the stipulated facts operates primarily in regularly routed passenger service and but occasionally in charter-bus and sight-seeing service. If the drafters of the Act intended to require a separate license for occasional charter-bus and sight-seeing service, they did not, in our view, provide for it in the language of the pertinent paragraphs. We are bound by the language.

In accordance with the foregoing, the judgment of the trial court is

Reversed.

---

[1] If the excepting clause is read without the word "solely," thus—"when such vehicle or vehicles are to be operated for sight-seeing purposes"—the word "when" is still applicable to an occasional use for any period less than the entire tax year, and the words "for sight-seeing purposes" are adequate to exclude any other purposes, including regularly routed transportation service, unless the unlikely contingency be imagined of the use of a vehicle for regularly routed passenger service combined at the very same time with sight-seeing service, as, for example, through the presence on a regularly routed passenger bus of a sight-seeing lecturer.